Plaintiff sues his employer, the T. J. Moss Tie Company, and its insurer, Consolidated Underwriters, to recover judgment for workman's compensation at the rate of Twenty ($20) Dollars per week for four hundred (400) weeks. He alleges that while performing the duties of a contract of hiring with said employer, he suffered an accident resulting in disability, total and permanent, to do work of a reasonable character. He is an illiterate colored man, forty years old, and earned a livelihood by manual labor.
The suit is resisted by defendants on two grounds, to-wit:
1. That plaintiff's employment was not hazardous and that his employer's operations are not so classed by Act No. 20 of 1914, as amended;
2. That plaintiff was not injured while working for his employer.
Defendants appealed from judgment awarding plaintiff compensation, as prayed for by him.
We shall consider the urged defenses in inverse order. If plaintiff failed to prove by a preponderance of the evidence that the disabling injuries from which he suffers resulted from an accident while working for the tie company, that, of course, ends the case; and we are of the opinion he has failed to do this.
The tie company is engaged in manufacturing, transporting and selling railway crossties. Its operations are quite extensive. Plaintiff had been in its employ for about two years. He alleged and testified that in the morning of November 30, 1943, while carrying a tie on his shoulder toward a railway box car into which ties were then being loaded, one of his feet slipped from a tie upon which he was walking, causing him to "lose control of himself." He testified also that then and there his stomach began paining and he grew sick of the stomach; that he sat down and told his two co-workers he believed be was sick and felt badly; that he tried to continue loading ties but was unable to do so because he "was hurting so bad." He was examined the following morning by Dr. S.F. Fraser, who practices in and about Many, Sabine Parish, Louisiana. The examination revealed a large, fully developed, right inguinal hernia, which, in the doctor's opinion, was not of recent origin. The intestines had passed through the ring and filled the scrotum.
Plaintiff's testimony as regards the slipping of his feet at the time and place alleged by him, is corroborated substantially by his two fellow laborers. They went further than he and said that he was forced to "head-up" the tie, which we understand to mean that he removed the tie from his shoulders and stood it up erect while holding it. Whether he carried it on to the box car is not shown.
Neither plaintiff nor his witnesses say that he struggled to stay on his feet or that the crosstie slipped from his shoulder or in any other manner was lost control of. Plaintiff testified that the top side of ties on the ground at the time was covered with frost which made the surface slippery and dangerous to walk upon; that for this reason he turned over the tie he slipped from before stepping on it, but, in contradiction of this, added that the frost on the tie caused him to slip and be injured.
Plaintiff, while complaining of some pain-during the day he alleges he was hurt, did *Page 295 
not evince the excruciating pain and suffering that surely would have followed the sudden rupture of physical structure necessary to produce a hernia of the character he possesses, but, on the contrary, stayed on the job all day and performed some labor.
[1, 2] It is common knowledge that many men afflicted with fully developed hernia, find it possible to earn a livelihood from manual labor. The fact that plaintiff performed heavy work prior to the date of the alleged accident raises no inference against the opinion that the hernia was not of recent creation.
When the alleged accident occurred Mr. Tom Rivers, defendant's foreman, was absent. On his return in the afternoon plaintiff told him he had hurt himself. The foreman suggested that he see Dr. Fraser, stating that as he (the foreman) was going to Many the following morning, plaintiff could go along with him. Coincidentally, plaintiff was due to report to the draft board in Many that same day and had to be there for that reason. On arriving at Many he first went to Dr. Fraser's office and was examined as heretofore stated.
[3] That a hernia of the character possessed by defendant disables the possessor to perform manual labor of any reasonable character and entitles him to workman's compensation under the Employers' Liability Act, if the other necessary conditions exist and are proven, is not open to debate.
Several years prior to the alleged accident plaintiff was successfully operated upon for a hernia of the left side.
Dr. Fraser is positive in his opinion that plaintiff's present hernia is of long standing. He gave the following testimony to support this conclusion, to-wit:
"A. * * * He told me that he was on his way to Shreveport. That the Draft Board had summoned him to come in and he was coming up for examination, and he asked me if I would check him. So I did so and found this hernia. I asked him how long he had had it. He said that it had happened the day before.
"There was no evidence of any bruise. No evidence of any hemorrhage or unusual tenderness and, insofar as I was concerned, it was a hernia of old standing. One that he had had for a long while.
"Q. I see. A. In fact there was definite indication, with other findings, which would indicate that by what we term pigmentation; change in color of the skin as the result of hernia of long standing.
"Q. If he had had a hernia the day before, Doctor, would not there have been evidence of it? A. I see no way at all that he could have had a hernia occurring * * * any injury occurring the day before that could have produced a hernia like he had and for him still to have been able to casually walk into my office and request a checkup. It is just impossible, that is all.
"Q. That just could not happen? A. In my opinion, no. I think he had this hernia. I suggested he get on the table to reduce it, and he got up. These individuals who have had hernias for a long time have what we call a technique of reducing hernias that is very characteristic, and he very definitely reduced that hernia. I mean it was more or less almost habit the way he got up on the table and very easily reduced this extensive hernia. It was obvious to me that he had had it for a long time. I mean in my mind there was no question about it.
"Q. He knew how to reduce it? A. Yes, sir."
Plaintiff does not allege nor contend that he was afflicted with hernial condition prior to the alleged accident; that is, that he suffered from potential hernia prior to that time. His position is that the hernia was wholly and totally produced from slipping on the tie.
If plaintiff was free of the hernia prior to date of the alleged accident, it is passing strange he did not produce witnesses, especially some relatives or member of his family, to give testimony to prove the fact.
The reasons advanced by Dr. Fraser to sustain his opinion are unquestionably sound. They are in consonance with those given by many other reputable physicians in cases of this character which were adopted by this and other courts of this state. Physicians are unable to definitely fix the age of a hernia but they can definitely determine if one is old or not.
[4] We are reluctant to disagree with the lower court on the question of fact involved in this case, but find ourselves impelled to do so.
For the reasons herein given, the judgment appealed from is reversed and plaintiff's suit is dismissed at his cost.
KENNON, J., takes no part. *Page 296